**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THERESA BRYANT, JILL MANNING, SUSAN SNYDER, DIANE ELLIOTT, individually and for the benefit of others, | |
| *Plaintiffs*, | Case No. |
| v. | |
| ENTERTAINMENT SHOPPING, INC. doing business as Swoopo.com and oohilove.com, a California Corp.; BIDCACTUS LLC, a Delaware limited liability company; QUIBIDS LLC, a foreign limited liability company; BEEZID, INC. d/b/a Beezid.com, a Canadian Corp., PROJECT FAIR BID, INC., d/b/a BigDeal.com, a Delaware Corp., | JURY DEMAND |
| *Defendants*. | |

## COMPLAINT

1.      Plaintiffs Theresa Bryant, Jill Manning, Susan Snyder and Diane Elliott by and through their counsel, upon personal knowledge as to their own acts and beliefs, and upon information and belief as to all matters based upon investigation of counsel, alleges as follows:

### I.      JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C §1332 because there is diversity of citizenship and the amount of controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

3.      All Defendants are foreign corporations whose principal places of business are outside the state of Illinois.

4.      Theresa Bryant is a citizen and resident of Kane County, Illinois. All Defendants transact business by means of the Internet throughout the state of Illinois.

5.      The Court has general jurisdiction over Defendants.

6.      The venue is proper in the Northern District of Illinois because Defendants are subject to personal jurisdiction in Illinois since they all advertise and conduct business in Illinois through the internet. In addition, portions of the gambling violations described herein were conducted in and governed by the laws of Illinois.

7.      Plaintiffs did not enter into any contracts with Defendants and any purported contractual language on defendant's websites regarding jurisdiction, venue, forum non conveniens or choice of law are void. 720 ILCS 5/28-7.

8.      Joinder of Defendants is proper since the illegal conduct complained of is identical for each Defendant, judicial economy would be served and the risk of inconsistent rulings avoided.

## A. PARTIES

**Defendants**

9.      Entertainment Shopping, Inc. d/b/a Swoopo.com and oohilove.com is a California corporation with its principal place of business in California.

10.     Bidcactus LLC is a Delaware corporation whose principal place of business is Connecticut. It conducts internet auctions under the name Bidcactus.com.

11.     Project Fair Bid, Inc. d/b/a BigDeal.com is a California corporation with its principal place of business in California.

12.     Quibids LLC d/b/a Quibids.com is a foreign limited liability company with its principal place of business in Oklahoma.

13.     Beezid, Inc. d/b/a Beezid.com, is a Canadian Corporation with its principal place of business in Canada.

14.     Defendants operate their internet businesses in all 50 states including the states of Illinois, Massachusetts, Georgia, Ohio and New Jersey.

**Plaintiffs**

15.     Plaintiff Theresa Bryant is a resident of Illinois. Plaintiff Bryant pledges, from her share of any individual recovery from this lawsuit, to donate 1/8 of such recovery to the State of Illinois General Fund and 1/8 to Misericordia, a non-profit charitable organization.

16.     Plaintiff Jill Manning is a resident of Massachusetts. Plaintiff Manning pledges, from her share of any individual recovery from this lawsuit, to donate 1/8 of such recovery to the State of Massachusetts General Fund and 1/8 to Cancer for College, a non-profit charitable organization.

17.     Plaintiff Susan Snyder is a resident of the State of Georgia. Plaintiff Snyder pledges, from her share of any individual recovery from this lawsuit, to donate 1/2 of such recovery to the educational fund of the county in which she resides, Fulton County Georgia.

18.     Plaintiff Diane Elliott is a resident of Washington. Plaintiff Elliot pledges, from her share of any individual recovery from this lawsuit, to donate 1/16 of such recovery to the State of Ohio General Fund, 1/16 to the State of New Jersey General Fund and 1/8 to Cancer for College, a non-profit charitable organizations.

## I.     INTRODUCTION

19.     This action alleges that Defendants operate illegal Internet gambling websites, by permitting persons to play games of chance for money and/or make a wager upon the result of a game or contest. Defendants operate what is known as "Penny Auctions" websites. Penny

auctions first began operation in Europe in 2005 by the parent company of Defendant Entertainment Shopping, Inc. (Entertainment Shopping, AG). Defendant Entertainment Shopping, Inc., launched the first penny auctions in the United States in 2008 under the name of Swoopo.com. Each of the other Defendants copied Entertainment Shopping's penny auction business model and they all have almost identical rules and website designs. The basic features of Defendants penny auctions are that, in order to bid on merchandise, a player must first pay an entry fee by purchasing bid packs ranging in price from $20 to more than $500. Unlike a normal auction, in order to place bids on the merchandise for the chance to win, a player must pay the Defendants a bidding fee of $.60 to one dollar for each bid, (depending on the Defendants' rules). The winner of the auction is not the highest bid, but rather, the last bid when time runs out. In addition, unlike a normal auction, each bid only increases the price of the merchandise by a penny, hence the name "penny auction". Each auction usually starts at $.00 and 15 to 30 seconds is added to the clock with each bid. Every time contestants bid they are playing a game of chance hoping that time will run out before another player bids. Defendants make their money by charging the entry fee and retaining the money from each failed bid. Defendants' auctions are illegal gambling because, among other things, they charge consideration for a chance to win a prize.

20.     Defendants conduct of charging consideration for the chance to win prizes (or something of value), violates all 50 state laws prohibiting unauthorized gambling. For purposes of this lawsuit, the particular laws prohibiting gambling that Plaintiffs allege Defendants violate are described in the state of Illinois criminal statutes, 720 ILCS 5/28, *et. seq.;* Georgia Criminal Code, § 16-12 *et. seq.;* Massachusetts General Laws Chapter 271, *et. seq.;* the New Jersey Code of Criminal Justice Chapter 37, *et. seq.;* and the Ohio Revised Code Chapter 2915 *et. seq.*

21.     Plaintiffs seek recovery from Defendants for the gambling losses of other players pursuant to Illinois Code 720 ILCS 5/28-8(b), Georgia Code § 13-8-3; Massachusetts General Laws Chapter 137 § 1; Ohio Revised Code § 3763.04, § 3763.08 and New Jersey Criminal Law 2A:40-6. These statutes allow losers to recover their gambling losses from the winners, and if the losers fail to make a claim within six months, any other person can recover those losses.

## II.     FACTS COMMON TO ALL DEFENDANTS

22.     Defendants charge consideration to players to play a game of chance for money to win prizes such as televisions, laptops, electronics, household items and gift cards. The websites run 24 hours a day in all 50 states. Their internet website addresses are www.Bidcactus.com, Quibids.com, Beezid.com, BigDeal.com, Swoopo.com and oohilove.com. Defendants conduct their penny auction businesses for profit and they do not have any state or federal authorization or exemptions that allow them to organize, promote and operate their internet gambling websites.

23.     Unlike normal auctions, where there are no entry fees or bidding fees, Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is a violation of Illinois criminal statutes, 720 ILCS 5/28, *et. seq.;* Massachusetts General Laws Chapter 271, *et. seq.;* Georgia Criminal Code, § 16-12 *et. seq.;* New Jersey Criminal Law 2A:40, *et. seq.;* and the Ohio Revised Code Chapter 2915 *et. seq.*

24.     The Merchandise price usually starts at $0.00 and there is a countdown timer that adds 3-30 seconds (normally 15 seconds) with each new bid.

25.     Players pay Defendants $0.60 to $1.00 (hereinafter rounded to $.75) for each bid for the chance to be the last player to bid when time runs out and win a prize.

26.     Each $0.75 bid raises the price by only a penny.

5

27.     Unlike a normal auction, where the highest bidder is the winner of the auction, the winner of a Defendants "auction" is the *last player to bid before time runs out*.

28.     Every bid is a wager upon the result of a game or contest of who will be the last player to bid before time runs out.

29.     If a subsequent bid is placed the previous player loses and a new game of chance begins over who can be the last bidder. Each player must then decide if they want to pay another $.75 for a new 15 second chance to win.

30.     If another player bids the timer is reset and the previous player loses. This starts another game of chance. The game of chance goes on and on, until finally time runs out when no other player pays $.75 for the chance to win.

31.     In Defendants auctions, an element of chance always exists because no one can predict or control whether other players will bid.

32.      If someone else bids, they lose and they must decide whether to purchase another $.75 chance in the hopes that no one will bid after them.

33.     Each $.75 bid is a new game of chance on whether someone else will bid and reset the clock for a new contest.

34.     Each $.75 bid is a bet on the outcome of a future contingent event — that time will run out before someone else another bet. The new bet resets the clock for the outcome of the new future contingent event. This process is repeated with each subsequent bid.

35.     The odds of winning (chance to win) do not increase with any bid, because anyone can place another bid.

36.     It does not matter how many times someone bids, the timing of those bids, or at what price someone bids, since each bid is a separate chance to win. Each bid is nothing more than lottery ticket, policy or game of chance purchased for the chance to win a prize.

37.     Each individual player has no control over the actions of the other players, which determine the outcome of the contest. No one can predict whether another player will place a subsequent bid, so each individual player is always betting $.75 on the chance that no one else will bid.

38.     The element of chance always exists because another player can always bid and whether another player places a subsequent bid is completely out of one's control.

39.     Chance exists if events over which the players have no control determine the outcome.

40.     Repeated bidding is irrelevant since each bid represents a separate and new chance to win and does not provide the player with any greater level of control over the outcome.

41.     All failed bids are lost to Defendants.  If a player bids 200 times he or she loses $150.00 (200 x $.75).

42.     Defendants' "auctions" combine the addictiveness of gambling with one's willingness to risk a small sum for the chance to win a prize of greater value.

43.      An example of one of Defendants' auctions for an iPad 3G 64GB, which retails for $829.00 at an Apple Store, was won for a final price of $227.91 on BigDeal.com. This means that players bet 22,791 times on the chance that their bet would be the final $.75 bet. BigDeal's revenues for iPad were **$17,093.25** (22,791 x $.75).

44.     What makes Defendants auctions work is the tendency of players to think of the bids that they have already put in as a "sunk cost" – money that they have already put toward buying the item. This is an illusion.

45.     The fact that a player has already bid 200 times does not mean that their chance of winning on the 201st bid is any higher than it was at the very beginning. A new bidder can come along at any time and, at the cost of a mere $.75, jump into the auction in which a player has already spent more than $150. The money the player put in has gotten him no closer to winning the prize than a bunch of losing lottery tickets.

46.     Defendants' auctions are a game of chance like an internet slot machine where the players feed $.75 into a slot machine for the chance to win a prize.

47.     If Defendants' auctions are not a game of chance, each bid would be a winning bid and Defendants would have to deliver the merchandise for each $.75 bid. Instead, the winner is the player who by chance, happens to be the last to bid.

48.     Defendants' internet "auctions" are unregulated gambling websites that have all of the public interest risks associated with other forms of gambling. Internet gambling introduces new ways to exacerbate these threats to health, welfare, safety, and morals. Gambling addicts and underage gamblers have greater accessibility to on-line gambling -- able to gamble from their homes immediately and on demand, at any time, on any day, unhindered by in-person regulatory measures. Concerns over ties to organized crime and money laundering are exacerbated where on-line gambling operations are not physically present in-state to be inspected for regulatory compliance. In addition, Defendants cannot guarantee a fair chance to win, since Defendants do not and cannot adequately protect players from other players cheating by

colluding with other players, using "bots," automated programs, scripts, multiple computers with different login id's, multiple email addresses or otherwise unfairly manipulating auctions.

49. Like the potential risks associated with other forms of illegal gambling, Defendants' "auction" are rigged against the players. Defendants allow the use of computer scripts that let players, in advance, set up a computer script that automatically places bids when the timer reaches 30 seconds or below. This means that all previous bids, before the 30 second reset, were guaranteed failed bids, prior to being placed. Defendants knew that these bids were failed bids before they were placed, but they do not advise players of this fact. This is no different than a casino using rigged dice, cards or machines such as rigged roulette wheels. Penny auctions can also be rigged by the use of computer bots, scripts and other fraudulent means. The state legislatures have a legitimate interest in outlawing gambling activities. Defendants' unregulated "auctions" are illegal gambling activities under the laws of all 50 states and in particular the states of Illinois, Massachusetts, Georgia, Ohio and New Jersey.

### III.     FACTS REGARDING EACH DEFENDANT

#### A. Each Defendant Admits the Elements of Gambling — Consideration, Chance and Prize.

50. Payment of consideration for the chance to win prices or things of value violates: the Illinois criminal statutes, 720 ILCS 5/28, et. seq.; Georgia Criminal Code, § 16-12 et. seq.; Massachusetts General Laws Chapter 271, et. seq.; New Jersey Criminal Law 2A:40, et. seq.; and the Ohio Revised Code Chapter 2915 et. seq. Each Defendant admits on their website (1) that they charge consideration, (2) that an element of chance exists and (3) that object of the bidding is to win discounts on merchandise (the prize).

**Bidcactus.com**

51.     Bidcactus.com operates an Internet website that charges consideration that allows a person to play a game of chance to win prizes. Bidcactus.com admits all of the elements of gambling on its website, e.g., consideration, chance and a prize.

52.     *Consideration:*     Bidcactus.com admits that payment of consideration is required in order to signup and to bid on merchandise (prizes). "Bidding starts at just $0.01 with no reserve. Bids cost only $0.75 each, and come in bidpacks of 30, 50, 100, 250 and 500 so you can walk away a winner with only a small amount invested! With each bid placed, an items' price increases by $0.10, $0.05, or $0.01 depending on the type of auction. When you bid, the counter gets re-set up to a maximum of 30 seconds. An auction ends when there are no further bids and there is a winner!"  "Purchasing bids: To bid in an auction, you must first purchase bids. Bids cost $0.75 each and come in packs of 30, 50, 100, 250, and 500 bids. A 50 Bidpack, for example, will give you 50 chances to bid. Every time you bid on an item, the number of bids in your account is reduced by one. When your bids run out, you must buy more bids in order to continue".

53.     *Chance:*     Bidcactus.com admits that it operates an Internet website that permits a person to play a game of *chance* to win prizes. Bidcactus' "FAQ" states "The reason for the time increase is to give other users a ***chance*** to respond and bid again if they wish [ ]." "This also prevents auction sniping, when a single user bids at the last possible second, giving other people ***no chance*** to outbid them." The information on purchasing bids states: "A 50 Bidpack, for example will give you ***50 chances*** to bid." Bidcactus states as one of their "top 10 tips": "Don't spread your bids too thinly. Focus on one or two auctions at a time ***to maximize***

*your chances of winning*.**" "*This will increase your chances of winning* **one of our most popular items!"

54.     ***Prize:***  Bidcactus.com admits on its website that the object of the bidding is to win merchandise at greatly reduced prices. "Bid & Win! Brand New Products ***Save up to 90% OFF retail prices***!" "Bids cost only $0.75 each, and come in bidpacks of 30, 50, 100, 250 and 500 so you can walk away a winner ***with only a small amount invested!***"

**Quibids.com**

55.     Quibids.com operates an Internet website that charges consideration that allows a person to play a game of chance to win prizes. Quibids admits all of the elements of gambling on its website, e.g., consideration, chance and a prize.

56.     ***Consideration:***        Quibids.com admits that payment of consideration is required in order to signup and to bid. The website states: "Your first bid pack buy is a set price, but after your initial bid pack purchase, there will be 5 different sizes of bid packs to choose from.  Most users will start with a Beginner Bid Pack while they try out their first few auctions.  Once you have selected a size of bid pack, just simply add your credit card and billing information and you're almost ready to partake in your first auction!  Remember, when purchasing bids you are buying the right to place bids and each bid is worth $0.60."

57.     ***Chance:***        Quibids.com admits that an element of *chance* is involved with bidding and winning the prize. Quibids help section states: "When you place a bid, we add a maximum of 10-20 seconds to the timer - to give someone else the ***chance*** to bid if they're interested." "QuiBids 101 is an information portal built by QuiBids to help educate our users on not only how our auction model works, but how to have ***the best chance of winning!***" "Everyone wants to know ***how to improve their chances of winning*** an auction on QuiBids." "If

someone else bids, time will be added and you will have ***another chance to bid.*** "Bid-O-Matic will always place bids to keep you on top and ***increase your chances of winning***." "***So how do you up your chances of winning an auction?***" "[W]e have learned several things that can ***increase a person's chance of winning*** an auction." "Then they bid on those items ***for a chance to win*** them far below retail price." "The limits are set in place in order ***to give a more fair chance for others to win.***" "So an auction is scheduled for the Amazon Kindle as a $.02 auction and as the timer counts down bids begin to be placed by users ***who are competing for a chance to win.***" "The more bids you have just ***give you a better chance of winning*** a particular auction." "From that point on the timer will reset to 0:20 seconds giving other bidders the ***chance*** to decide to make a final bid." "We want everyone to have ***a fair chance.***" "We here at QuiBids hate for any new user to fall into a pitfall and not win on our site. So, we've decided to write this article to help all new ***users up their chances of winning*** on our site." "And a ***better chance of winning*** an auction!" "So to keep you "in the know," we created a checklist of shortcuts to ensure you never miss ***the chance to win*** the item you have always wanted[.]" "We implement auction limits to give everyone ***the best chance possible to win*** items that they want." "As a result of their willingness to go all the way they usually have ***a very high chance of actually winning*** the item." "So an auction is scheduled for the Amazon Kindle as a $.02 auction and as the timer counts down bids begin to be placed by ***users who are competing for a chance to win.***"

58.    ***Prize:***  Quibids.com admits that object of the bidding is to win prizes: "Win Awesome Prizes at ***Amazing Prices!***" "Place Bids and Win!" "Simply click "Bid" on an auction. If you are the last bidder, YOU WIN!!" "You can win all sorts of popular products at ***incredibly low prices.***" "BLOWOUT AUCTIONS ***SAVE YOU UP TO 95%.***" "Customers can

expect to save up to this amount on these sites! ***Quibids 90%,*** Company Liquidation 70%,

…Amazon.com 5%." "Then they bid on those items *for a chance to win* them ***far below retail price.***"

**Beezid.com**

59.     Beezid.com operates an Internet website that charges consideration that allows a person to play a game of chance to win prizes. Beezid admits all of the elements of gambling on its website, e.g., consideration, chance and a prize.

60.     ***Consideration:***      Beezid.com admits that payment of consideration is required in order to signup and to bid. The website states: "In order to start bidding right away, you'll need to register an account and purchase some bids which are available in the bid package of your choice." "We offer several bid packages tailored to meet your needs. The cost for each bid will vary based on the package you choose. Bids are available in packs of 30, 50, 100, 200, 350 and 500 and range from $0.60 - $0.90 per bid. The more bids you buy, the cheaper it gets for each bid, and the greater the savings you can enjoy! Get yourself a Bid Pack and jump into the savings!"

61.     ***Chance:***      Beezid.com admits that an element of *chance* is involved with bidding and winning the prize. Beezid help section states: "If you're around to watch or not, the BEEZID SNIPER ***increases your chances*** of becoming the highest bidder and prevents an auction from ending!" "A Cherry auction is reserved for users who have not yet had the ***chance to win*** an auction and are the only auctions that Free bids can be applied to." "If the counter seems to be reaching zero pretty often, it can mean that there are few users bidding on that item and this gives you an edge by ***increasing your chances of winning***." "To ensure that we spread the winning around, we've made some special changes to the "LOCK" system. These changes

13

will allow everyone an ***even better chance of winning***, regardless of any current locks on your account."

62.     ***Prize:***  Beezid.com admits that object of the bidding is to win prizes: ***Up to 99% off on anything and everything.***"  "***75-99% off*** for 48 hours straight"  "Get ready for savings of ***75-99% off retail***."  "Beezid is real and the prizes are spectacular"  "***Upon claiming your prize***, you may choose either the iPhone 4 or an Apple gift card of equal value."  "…Beezid reserves the right to suspend payment of the ***prize***."  "You will get your bids when the contest closes and we pick the 1st, 2nd and 3rd place ***prizes***."  "The ***prize*** winner will win a  brand new 32GB iPod Touch by Apple."  "Follow those simple steps to be entered to win our ***BIG prizes*** and to claim your 50 bids for participating!'"  Beezid offers an easy and thrilling innovation on online shopping called penny auctions, where you can get thousands of dollars of ***items at more than 90% off***."

**BigDeal.com**

63.     BigDeal.com operates an Internet website that charges consideration that allows a person to play a game of chance to win prizes. BigDeal.com admits all of the elements of gambling on its website, e.g., consideration, chance and a prize.

64.     ***Consideration:***      BigDeal.com admits that payment of consideration is required in order to signup and to bid on merchandise (prizes). "Buy bids for just $.75 and start bidding on auctions."  "Buy bid tokens to compete for prizes. All *prizes* start at $0. Each bid raises the auction price by a few cents and adds up to 30 seconds to the countdown timer."  "How do I started? Buy bid tokens. They cost $0.75 each and are sold in packs. For instance, a pack of 30 bid tokens costs $22.50."

65.  *Chance:*      BigDeal.com admits that it operates an Internet website that permits a person to play a game of *chance* to win prizes, "Each bid raises the price on the auction and adds a few seconds to the countdown timer, giving others the ***chance*** to match your bid if they dare."  "Each bid raises the price of the item by $0.15 (less in some auctions) and adds a few seconds to the clock to give everyone a fair ***chance*** to bid."  "[W] guarantee you a fair ***chance to win*** a great deal on brand-new merchandise[.]"  "What is more fun than the ***chance*** to get a very Big Deal on a highly coveted item?"  "The last bidder before time expires, wins!"

66.  *Prize:*  BigDeal.com admits on its website that the object of the bidding is to win merchandise at greatly reduced prices. "Bid & Win! Brand New Products ***Save up to 90% OFF*** retail prices!" BigDeal.com-Official Site — ***Up to 99% off*** on Hot New Products." "BigDeal.com – Save up to 99%! Bid to Win Unbeatable Deals". BigDeal.com: Bid to win unbeatable deals on hundreds of new products every day."  "Buy bid tokens ***to compete for prizes***. All ***prizes*** start at $0."  "Choose your auction. From iPods to diamond earrings, BigDeal is all about new, name-brand, in-the-box, blow-your-mind products. ***Pick the prize you want*** and start bidding!"

**Swoopo.com**

67.  Swoopo.com operates an Internet website that charges consideration that allows a person to play a game of chance to win prizes. Swoopo.com admits all of the elements of gambling on its website, e.g., consideration, chance and a prize.

68.  *Consideration*:      Swoopo.com admits that payment of consideration is required in order to signup and to bid on merchandise (prizes). "Here is how it works: our online customers buy "bids" in advance. They cost $0.60 each and are sold in packs of 40, 75, 150, 400

or 1000. Bidders have the choice of placing single bids, or, using an electronic bid assistant called the "BidButler".

69.   ***Chance:***      Swoopo.com admits that it operates an Internet website that permits a person to play a game of chance to win prizes, "On Swoopo, the auction time increases with each bid placed. This allows other users ***the chance to bid***, and join in on the fun."  "As you can imagine, the more expensive items attract the most bidders, which makes them harder to win. So if you're new to Swoopo, you should go for one of the cheaper items as ***you'll have a greater chance of winning***…"  "Instead of bidding on more than one auction at a time, just choose one and stick with it. You will have a ***much better chance of winning*** the item if you take this approach."  "Give yourself a ***better chance of winning*** an auction by having lots of bids in your account. For example, instead of buying the Small BidPack, go for the Medium or Large BidPack instead."  "Our aim is that as many people as possible have ***a chance of winning*** some amazing deals on Swoopo."  "When you bid, we also reset the counter back up to a maximum of 20 seconds – to give someone else ***the chance to bid*** too if they're interested."  "We often get asked by people how to ***improve their chances of winning*** an auction on Swoopo."  "Do I have ***less chance of winning*** because you allow bidding from other countries?"  "We now offer a new type of auction, which means that at a certain point in time, our auctions will become closed to new bidders. This means that just those who have placed at least one single click bid on the auction can continue to bid – giving our bidders ***a higher chance of winning*** and ensuring things heat up a bit. […] This new function will make our auctions more exciting, and subsequently offers you ***better chances of winning*** our auctions."  "You'll have a ***second chance to win*** with our fun Bonus auctions."  "We exclusively offer Beginner Auctions to our new customers who haven´t won an auction on Swoopo before. Less competition - ***higher chances!***"

70. ***Prize:*** <u>Swoopo.com</u> admits on its website that the object of the bidding is to win merchandise at ***<u>greatly reduced prices</u>***. "Swoopo offers ***<u>bargain auctions</u>*** of new brand products. ***<u>Save up to 70%</u>*** for new LCD -TVs or up to 80% in Hifi/Electronics. Bid and Win high quality products." "Swoopo Penny Auctions: ***<u>Avg 70% Off Savings</u>*** on iPhone4, iPad, HDTVs and More. Try Now!" "Every user can get top of the range, brand name products for extraordinarily low prices."

**<u>oohilove.com</u>**

71. <u>oohilove.com</u> operates an Internet website that charges consideration that allows a person to play a game of chance to win prizes. oohilove.com admits all of the elements of gambling on its website, e.g., consideration, chance and a prize.

72. ***Consideration***: oohilove.com admits that payment of consideration is required in order to signup and to bid on merchandise (prizes). "Our auctions are different to Ebay's. At oohilove, you need to buy bids to participate in auctions. Bids cost 99¢ each & come in various Bid Pack sizes."

73. ***Chance:*** oohilove.com admits that it operates an Internet website that permits a person to play a game of chance to win prizes, "Each bid increases the auction: price by 2¢ and timer by a few seconds, allowing others a ***<u>chance to beat</u>*** your bid." "[a]nd the auction timer increases by 1 to 10 seconds, allowing other interested users the ***<u>chance</u>*** to outbid the latest bidders.(To make the auctions more exciting, during the last 30 seconds of the auction, the auction timer will not increase above 30 seconds no matter how many bids are placed.)" "Each bid will increase the auction time by 10 seconds to allow other interested bidders ***<u>the</u>*** ***<u>chance</u>*** to bid." "Although there is no guaranteed winning strategy, we would like to help you ***<u>increase your chances</u>*** of success." "Our cheaper products tend to have fewer bidders, meaning

your *__chances of winning__* are much higher." "Check out other great deals on designer handbags and accessories *__for a chance to win big__***!'"**

74.     *Prize:* oohilove.com admits on its website that the object of the bidding is to win merchandise at greatly reduced prices. "If you are the last bidder when the auction timer ends, you Win!" "There are 5 simple steps *__to win a bargain__* on oohilove." "Some of the few *incredible deals* our members have paid are set out below. GUCCI Interlocking Medium Black Hobo auction ended at $4.66 ([BP] paid $13 including bids *__saving 99%;__* Worth up to $1,134); LAUREN MERKIN Ava Clutch auction ended at $0.94 ([FM] paid $13 including bids *__saving 96%__*; Worth up to $338); LOUIS VUITTON Farandole Ring auction ended at $3.86 ([DG] paid $69 including bids, *__saving 63%;__* Worth up to $189). "Designer Luxury at unheard of prices'. 'Just won an authentic, brand-new designer item on Oohilove. Too good to be true? Check out other great deals on designer handbags and accessories for a chance to *__win big!__*'"

## IV.     CAUSE OF ACTIONS

## COUNT I — VIOLATION OF ILLINOIS LAW — THERESA BRYANT

75.     Plaintiffs incorporate the foregoing allegations as fully set forth herein.

76.     Plaintiff Theresa Bryant seeks recovery, individually and for the benefit of State of Illinois General Fund and Misericordia, from Defendants for gambling losses of players pursuant to 720 ILCS 5/28-8(b) of the Criminal Code of 1961.

77.      720 ILCS 5/28-8(b) provides that any person who loses money or any other thing of value through illegal gambling may recover what was lost from the winner. 720 ILCS 5/28-8(a) (1998). If the gambler does not bring a suit to recover his or her losses within six months of the time they occur, any other individual may bring a civil suit for damages triple the amount lost by the gambler. 720 ILCS 5/28-8(b).

78.     Players from the state of Illinois lost money to Defendants as a result of Defendants' illegal gambling activities.

79.     Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

80.     Defendants maintain accurate computer records of all of their winnings and the names and address and amount of losses of all players is easily ascertainable.

81.     The legislative purpose for 720 ILCS 5/28-8 (b) is to deter gambling by depriving the gambling establishments of their winnings, similar to whistleblowing laws. By this lawsuit, Plaintiff seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

82.     The time period Plaintiff seeks recovery is for six years prior to the filing of this lawsuit up to and including six months prior to the final judgment or final settlement of this lawsuit up to an including the final appeal.

### Illinois Gambling Laws

83.     It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to operate an Internet website that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game or contest. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. It is also illegal to possess any money, which has been received in the course of a bet or wager. 720 ILCS 5/28, *et. seq.*

84.     Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest.

85.     Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is an express violation of 720 ILCS 5/28-1(a)(12).

86.     Every bid is a wager upon the result of a game or contest of who will be the last player to bid when time runs out. This is an express violation of 720 ILCS 5/28-1(a)(12).

**Illegal Gambling Activities**

87.     Plaintiff and her beneficiaries are entitled to recover money losses from Defendants because Defendants engaged in illegal gambling activities in violations of 720 ILCS 5/28-1(a) as follows:

720 ILCS 5/28-1(a)(emphasis added):     A person commits gambling when he:

(3) **Operates, keeps, owns, uses,** purchases, exhibits, rents, sells, bargains for the sale or lease of, manufactures or distributes **any gambling device**; or

(5) Knowingly **owns or possesses any book, instrument or apparatus** by means of **which bets or wagers have been, or are, recorded or registered**, or knowingly **possesses any money which he has received in the course of a bet or wager**; or

(6) **Sells pools upon the result of any game or contest of skill or chance**, political nomination, appointment or election; or

(7) **Sets up or promotes any lottery or sells, offers to sell or transfers any ticket or share for any lottery**; or

(8) **Sets up or promotes any policy game** or sells, offers to sell or knowingly **possesses** or transfers any **policy ticket**, slip, **record, document** or other similar device; or

(9) Knowingly drafts, prints or **publishes any lottery ticket** or share, or any policy ticket, slip, record, document or similar device, except for such activity related to lotteries, bingo games and raffles authorized by and conducted in accordance with the laws of Illinois or any other state or foreign government; or

(10) Knowingly **advertises any lottery or policy game**, except for such activity related to lotteries, bingo games and raffles authorized by and conducted in accordance with the laws of Illinois or any other state; or

(11) Knowingly **transmits information as to wagers,** betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore or similar means; or knowingly **installs or maintains equipment for the transmission or receipt of such information**; except that nothing in this subdivision (11) prohibits transmission or receipt of such information for use in news reporting of sporting events or contests; or

(12) Knowingly **establishes, maintains, or operates an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest**, political nomination, appointment, or election by means of the Internet.

88.     Defendants knowingly violated all of the above Illinois criminal statutes against gambling. Defendants knowingly established, maintain, or operate an Internet site that permits persons to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest. Defendants engaged in

gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records all in violation of Illinois criminal statutes.

89.     Pursuant to 720 ILCS 5/28-8(b), Defendants are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

### PRAYER FOR RELIEF — THERESA BRYANT AND BENEFICIARIES

WHEREFORE, Plaintiff Theresa Bryant, individually and for the benefit of State of Illinois General Fund and Misericordia, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(a) Declaring Defendants guilty of illegal gambling;

(b) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to 720 ILCS 5/28-8 (b) of the Criminal Code of 1961;

(c) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(d) Award triple the amount of damages determined by the Court or Jury for the losses;

(e) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(f) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

(g) Granting such other and further relief as the Court deems equitable and just.

### COUNT II — VIOLATION OF MASSACHUSETTS LAW — JILL MANNING

90.     Plaintiffs incorporate the foregoing allegations as fully set forth herein.

91.     Plaintiff Jill Manning seeks recovery, individually and for the benefit of State of Massachusetts General Fund and Cancer for College, from Defendants for gambling losses of players pursuant to Massachusetts General Laws Chapter 137: Section 1.

92.     Chapter 137: Section 1 provides that any person who loses money or any other thing of value through illegal gambling may recover what was lost from the winner. If the gambler does not bring a suit to recover his or her losses within three months of the time they occur, any other individual may bring a civil suit for damages treble the value of the amount lost.

93.     Players from the state of Massachusetts lost money to Defendants as a result of Defendants' illegal gambling activities.

94.     Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

95.     Defendants maintain accurate computer records of all of their winnings and the names and address and amount of losses of all players is easily ascertainable.

96.     The legislative purpose for Chapter 137: Section 1 is to deter gambling by depriving the gambling establishments of their winnings, similar to whistleblowing laws. By this lawsuit, Plaintiff Jill Manning seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

97.     The time period Plaintiff seeks recovery is for six years prior to the filing of this lawsuit up to and including three months prior to the final judgment or final settlement of this lawsuit up to an including the final appeal.

**Massachusetts Gambling Laws**

98.     It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to maintain gambling books and records and it

23

is illegal to transmit gambling information. It is also illegal to possess any money, which has been received in the course of a bet or wager. Chapter 271: Section 5A, Section 7, Section 7A, Section 9, Section 11, Section 13, Section 15, Section 16 Section 16A, Section 18 Section 19, Section

99.     Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest.

100.     Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is an express violation of. Chapter 271 *et. seq.*

101.     Every bid is a wager upon the result of a game or contest of who will be the last player to bid when time runs out. This is an express violation of Chapter 271, *et. seq.*

**Illegal Gambling Activities**

102.     Plaintiff and her beneficiaries are entitled to recover money losses from Defendants because Defendants engaged in illegal gambling activities in violations of Chapter 271, *et. seq.* as follows:

**Section 7.**     Whoever sets up or promotes a lottery for money or other property of value, or by way of lottery disposes of any property of value, or under the pretext of a sale, gift or delivery of other property or of any right, privilege or thing whatever disposes of or offers or attempts to dispose of any property, with intent to make the disposal thereof dependent upon or connected with chance by lot, dice, numbers, game, hazard or other gambling device, whereby such chance or device is made an additional inducement to the disposal or sale of said property[…].

**Section 7A.**     In this section the following words shall have the following meanings:

"**Raffle**", an arrangement for raising money by the sale of tickets, certain among which, as determined by chance after the sale, entitle the holders to prizes. […]

(Defendants do not have the proper authorization under Section 7A to conduct raffles in Massachusetts.)

**Section 16A**. Whoever knowingly organizes, supervises, manages or finances at least four persons so that such persons may provide facilities or services or assist in the provision of facilities or services for the conduct of illegal lotteries, or for the illegal registration of bets or the illegal buying or selling of pools upon the result of a trial or contest of skill, speed or endurance of man, beast, bird or machine, or upon the happening of any event, or upon the result of a game, competition, political nomination, appointment or election, or whoever knowingly receives from at least four such persons compensation or payment in any form as a return from such lotteries, such registration or such buying or selling

103. Defendants knowingly violated all of the above Massachusetts criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of Massachusetts criminal statutes.

104. Pursuant to Chapter 137: Section 1, Defendants are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

### PRAYER FOR RELIEF — JILL MANNING AND BENEFICIARIES

WHEREFORE, Plaintiff Jill Manning, individually and for the benefit of State of Massachusetts General Fund and Cancer for College, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(h) Declaring Defendants guilty of illegal gambling;

(i) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to Chapter 137: Section 1;

(j) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(k) Award triple the amount of damages determined by the Court or Jury for the losses;

(l) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(m) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

(n) Granting such other and further relief as the Court deems equitable and just.

## COUNT III — VIOLATION OF GEORGIA LAW — SUSAN SNYDER

105. Plaintiffs incorporate the foregoing allegations as fully set forth herein.

106. Plaintiff Susan Snyder seeks recovery, individually and for the benefit of the educational fund of Fulton County, Georgia, from Defendants, for gambling losses of players pursuant to Georgia Code § 13-8-3(b).

107. Code § 13-8-3(b) provides that money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county.

108. Players from the state of Georgia lost money to Defendants as a result of Defendants' illegal gambling activities.

109. Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

26

110.	Defendants maintain accurate computer records of all of their winnings and the names and address and amount of losses of all players is easily ascertainable.

111.	The legislative purpose for Code § 13-8-3(b) is to deter gambling by depriving the gambling establishments of their winnings, similar to whistleblowing laws. By this lawsuit, Plaintiff Susan Snyder seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

112.	The time period Plaintiff seeks recovery is for six years prior to the filing of this lawsuit up to and including six months prior to the final judgment or final settlement of this lawsuit up to an including the final appeal.

**Georgia Gambling Laws**

113.	It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. It is also illegal to possess any money, which has been received in the course of a bet or wager. Georgia Code § 16-12-20 through Code § 16-12-28.

114.	Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest.

115.	Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is an express violation of Georgia Code § 16-12-20 through Code § 16-12-28.

116.	Every bid is a wager upon the result of a game or contest of who will be the last player to bid when time runs out. This is an express violation of Georgia Code § 16-12-20 through Code § 16-12-28.

### Illegal Gambling Activities

117. Plaintiff and her beneficiaries are entitled to recover money losses from Defendants because Defendants engaged in illegal gambling activities in violations of Georgia Code § 16-12-20 through Code § 16-12-28 as follows:

Code § 16-12-20 (1) "**Bet**" means an agreement that, dependent upon chance even though accompanied by some skill, one stands to win or lose something of value.

Code § 16-12-20 (2) "**Gambling device**" means:

(A) Any contrivance which for a consideration affords the player an opportunity to obtain money or other thing of value, the award of which is determined by chance even though accompanied by some skill, whether or not the prize is automatically paid by contrivance;

(B) Any slot machine or any simulation or variation thereof.

Code § 16-12-20 (4) "**Lottery**" means any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win such prize, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or by some other name.

Code § 16-12-21**:**

(a) A person commits the **offense of gambling** when he:

(1) Makes a bet upon the partial or final result of any game or contest or upon the performance of any participant in such game or contest;

(2) Makes a bet upon the result of any political nomination, appointment, or election or upon the degree of success of any nominee, appointee, or candidate; or

(3) Plays and bets for money or other thing of value at any game played with cards, dice, or balls.

28

Code § 16-12-21:

(a) A person commits the **offense of commercial gambling** when he intentionally does any of the following acts:

(1) Operates or participates in the earnings of a gambling place;

(2) Receives, records, or forwards a bet or offer to bet;

(3) For gain, becomes a custodian of anything of value bet or offered to be bet;

(6) Sets up or promotes any lottery, sells or offers to sell, or knowingly possesses for transfer or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery.

118.    Defendants knowingly violated all of the above Georgia criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of Georgia criminal statutes.

119.    Pursuant to Code § 13-8-3(b), Defendants are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

**PRAYER FOR RELIEF — SUSAN SNYDER AND FULTON COUNTY GEORGIA**

WHEREFORE, Plaintiff Susan Snyder, individually and for the benefit of the education fund of Fulton County Georgia, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(o) Declaring Defendants guilty of illegal gambling;

(p) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to Code § 13-8-3(b);

29

(q) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(r) Award triple the amount of damages determined by the Court or Jury for the losses;

(s) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(t) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

Granting such other and further relief as the Court deems equitable and just.

### COUNT IV — VIOLATION OF OHIO LAW — DIANE ELLIOTT

120. Plaintiffs incorporate the foregoing allegations as fully set forth herein.

121. Plaintiff Diane Elliott seeks recovery, individually and for the benefit of the state of Ohio General Fund and Cancer for College, from Defendants, for gambling losses of players pursuant to Ohio Revised Code § 3763.04.

122. Ohio Revised Code § 3763.04 provides that if a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit.

123. Players from the state of Ohio lost money to Defendants as a result of Defendants' illegal gambling activities.

124. Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

125. Defendants maintain accurate computer records of all of their winnings and the names and address and amount of losses of all players is easily ascertainable.

126.     The legislative purpose for Ohio Revised Code § 3763.04 is to deter gambling by depriving the gambling establishments of their winnings, similar to whistleblowing laws. By this lawsuit, Plaintiff Susan Snyder seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

127.     The time period Plaintiff seeks recovery is for six years prior to the filing of this lawsuit up to and including six months prior to the final judgment or final settlement of this lawsuit up to an including the final appeal.

### Ohio Gambling Laws

128.     It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. Bookmaking is illegal. It is also illegal to possess any money, which has been received in the course of a bet or wager. Ohio Code § 2915 et. seq.

129.     Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest.

130.     Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is an express violation of Ohio Code § 2915.02.

131.     Every bid is a wager upon the result of a game or contest of who will be the last player to bid when time runs out. This is an express violation of Ohio Code § 2915.02.

### Illegal Gambling Activities

132.     Plaintiff and her beneficiaries are entitled to recover money losses from Defendants because Defendants engaged in illegal gambling activities in violations of Ohio Code § 2915 et. seq.as follows:

31

§ 2915.01 Definitions.

As used in this chapter:

(A)"Bookmaking" means the business of receiving or paying off bets.

(B)"Bet" means the hazarding of anything of value upon the result of an event, undertaking, or contingency, but does not include a bona fide business risk.

(C)"Scheme of chance" means a slot machine, lottery, numbers game, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skill-based amusement machine, or a pool not conducted for profit.

(D) "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

(E)"Game of chance conducted for profit" means any game of chance designed to produce income for the person who conducts or operates the game of chance, but does not include bingo.

(F)"Gambling device" means any of the following:

(1) A book, totalizer, or other equipment for recording bets; (2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance or evidencing a bet; (3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance; (4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes.

(G)"Gambling offense" means any of the following:

32

(1) A violation of section 2915.02, 2915.03, 2915.04, 2915.05, 2915.06, 2915.07, 2915.08, 2915.081, 2915.082, 2915.09, 2915.091, 2915.092, 2915.10, or 2915.11 of the Revised Code; (2) A violation of an existing or former municipal ordinance or law of this or any other state or the United States substantially equivalent to any section listed in division (G)(1) of this section or a violation of section 2915.06 of the Revised Code as it existed prior to July 1, 1996; (3) An offense under an existing or former municipal ordinance or law of this or any other state or the United States, of which gambling is an element; (4) A conspiracy or attempt to commit, or complicity in committing, any offense under division (G)(1), (2), or (3) of this section.

(VV)(1) "Slot machine" means either of the following:

(a) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player who gives the thing of value in the hope of gain; (b) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player to conduct or dispense bingo or a scheme or game of chance.

§ 2915.02 Gambling.

(A) No person shall do any of the following:

(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;

(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance;

(3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of information for use in establishing odds or

determining winners in connection with bookmaking or with any game of chance conducted for profit or any scheme of chance;

(4) Engage in betting or in playing any scheme or game of chance as a substantial source of income or livelihood;

(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.

(B) For purposes of division (A)(1) of this section, a person facilitates bookmaking if the person in any way knowingly aids an illegal bookmaking operation, including, without limitation, placing a bet with a person engaged in or facilitating illegal bookmaking. For purposes of division (A)(2) of this section, a person facilitates a game of chance conducted for profit or a scheme of chance if the person in any way knowingly aids in the conduct or operation of any such game or scheme, including, without limitation, playing any such game or scheme.

133. Defendants knowingly violated all of the above Ohio criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of Ohio criminal statutes.

134. Pursuant to Ohio Revised Code § 3763.04, Defendants are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

**PRAYER FOR RELIEF — DIANE ELLIOTT AND HER BENEFICIARIES**

WHEREFORE, Plaintiff Diane Elliott, individually and for the benefit of the state of Ohio General Fund and Cancer for College, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(u) Declaring Defendants guilty of illegal gambling;

34

(v) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to Ohio Revised Code § 3763.04;

(w) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(x) Award triple the amount of damages determined by the Court or Jury for the losses;

(y) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(z) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

Granting such other and further relief as the Court deems equitable and just.

## COUNT V — VIOLATION OF NEW JERSEY LAW — DIANE ELLIOTT

135.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

136.    Plaintiff Diane Elliott seeks recovery, individually and for the benefit of State of New Jersey General Fund and the Cancer for College, from Defendants for gambling losses of players pursuant to the loser to sue for the same. N.J. Stat. Ann. § 2A:40-6.

137.    N.J. Stat. Ann. § 2A:40-6 provides that If the person who shall lose and pay such money, or lose and deliver such thing or things as aforesaid, shall not, within the time aforesaid, without collusion, sue for the money or other thing or things so lost and paid, or delivered, any other person may sue for and recover the same, with costs of suit, from such winner, depositary or stakeholder as aforesaid; the one moiety thereof to the use of the person suing for the same, and the other moiety to the use of the state; provided the action is instituted within 6 calendar months from and after the expiration of the time limited in section 2A:40-5 of this title for the loser to sue for the same. N.J. Stat. Ann. § 2A:40-6.

138.    Players from the state of New Jersey lost money to Defendants as a result of Defendants' illegal gambling activities.

139.    Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

140.    Defendants maintain accurate computer records of all of their winnings and the names and address and amount of losses of all players is easily ascertainable.

141.    N.J. Stat. Ann. § 2A:40-6 is titled: "Informer Action to Recover Money or Property Lost At Gaming". The legislative purpose for N.J. Stat. Ann. § 2A:40-6 is to deter gambling by depriving the gambling establishments of their winnings, similar to whistleblowing laws. By this lawsuit, Plaintiff seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

142.    The time period Plaintiff seeks recovery is for six years prior to the filing of this lawsuit up to and including six months prior to the final judgment or final settlement of this lawsuit up to an including the final appeal.

**New Jersey Gambling Laws**

143.    It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to operate an Internet website that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game or contest. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. It is illegal to engage in bookmaking. It is also illegal to possess any money, which has been received in the course of a bet or wager. All wagers, bets or stakes made to depend upon any race or game, or

upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful. N.J. Stat. Ann. § 2A:40-1 and N.J. Stat. Ann. § 2C:37 et. seq.

144.     Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest.

145.     Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is an express violation of N.J. Stat. Ann. § 2A:40-1 and N.J. Stat. Ann. § 2C:37 et. seq..

146.     Every bid is a wager upon the result of a game or contest of who will be the last player to bid when time runs out. This is an express violation of N.J. Stat. Ann. § 2A:40-1 and N.J. Stat. Ann. § 2C:37 et. seq.

### Illegal Gambling Activities

147.     Plaintiff and her beneficiaries are entitled to recover money losses from Defendants because Defendants engaged in illegal gambling activities in violations of N.J. Stat. Ann. § 2A:40-1 and N.J. Stat. Ann. § 2C:37 et. seq. as follows:

N.J. Stat. Ann. § 2A:40-1: Gaming Transactions Unlawful:

All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful.

N.J. Stat. Ann. § 2C:37-1: Definitions:

a. "Contest of chance" means any contest, game, pool, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants or some other persons may also be a factor therein.

b. "Gambling" means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.

c. "Player" means a person who engages in any form of gambling solely as a contestant or bettor, without receiving or becoming entitled to receive any profit therefrom other than personal gambling winnings, and without otherwise rendering any material assistance to the establishment, conduct or operation of the particular gambling activity. g. "Bookmaking" means advancing gambling activity by unlawfully accepting bets from members of the public upon the outcome of future contingent events as a business.

h. "Lottery" means an unlawful gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other media, one or more of which chances are to be designated the winning ones; and (b) the winning chances are to be determined by a drawing or by some other method based upon the element of chance; and (c) the holders of the winning chances are to receive something of value.

i. "Policy" or "the numbers game" means a form of lottery in which the winning chances or plays are not determined upon the basis of a drawing or other act on the part of persons conducting or connected with the scheme, but upon the basis of the outcome or outcomes of a future contingent event or events otherwise unrelated to the particular scheme.

N.J. Stat. Ann. § 2C:37-2. Promoting Gambling:

a. Promoting Gambling Defined. A person is guilty of promoting gambling when he knowingly:

(1) Accepts or receives money or other property, pursuant to an agreement or understanding with any person whereby he participates or will participate in the proceeds of gambling activity; or

(2) Engages in conduct, which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.

b. Grading. A person who violates the provisions of subsection a. by:

(1) Engaging in bookmaking to the extent he receives or accepts in any one day more than five bets totaling more than $1,000.00; or

(2) Receiving, in connection with a lottery or policy scheme or enterprise (a) money or written records from a person other than a player whose chances or plays are represented by such money or records, or (b) more than $100.00 in any one day of money played in such scheme or enterprise, is guilty of a crime of the third degree and notwithstanding the provisions of section 2C:43-3 shall be subject to a fine of not more than $35,000.00 and any other appropriate disposition authorized by N.J.S.2C:43-2b.

A person who violates the provisions of subsection a. by engaging in bookmaking to the extent he receives or accepts three or more bets in any two-week period is guilty of a crime of the fourth degree.

N.J. Stat. Ann. § 2C:37-3. Possession of Gambling Records:

a. A person is guilty of possession of gambling records when, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article:

(1) Of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, including any paper or paper product in sheet form chemically converted to nitrocellulose having explosive characteristics as well as any water soluble paper or paper derivative in sheet form; or

(2) Of a kind commonly used in the operation, promotion or playing of a lottery or policy scheme or enterprise.

N.J. Stat. Ann. § 2C:37-7. Possession of a Gambling Device:

A person except a player is guilty of possession of a gambling device when, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of: a. A slot machine; or b. Any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.

148.     Defendants knowingly violated all of the above New Jersey criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of New Jersey criminal statutes.

149.     Pursuant to 720 ILCS 5/28-8(b), Defendants are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

**PRAYER FOR RELIEF — DIANE ELLIOTT AND BENEFICIARIES**

WHEREFORE, Plaintiff Diane Elliott, individually and for the benefit of State of New Jersey General Fund and Cancer for College, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(aa)    Declaring Defendants guilty of illegal gambling;

(bb)    Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to N.J. Stat. Ann. § 2A:40-6;

(cc)    Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(dd)    Award triple the amount of damages determined by the Court or Jury for the losses;

(ee)    Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(ff) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

 Granting such other and further relief as the Court deems equitable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury of all matters that can be so tried.


Dated: February 11, 2011.

Plaintiffs and their Beneficiaries,



By: _s/ William Houck_
William Houck

41

William Houck
Houck Law Firm, P.S.
4045 262nd Ave. SE
Issaquah, Washington 98028
(425) 392-7118
ADRC:   3122387
© Houck Law Firm, P.S.