UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA BRYANT; <br> JILL MANNING; SUSAN SNYDER; <br> DIANE ELLIOTT, individually and for <br> the benefit of others, <br><br> Plaintiffs, <br><br> v. <br><br> QUIBIDS LLC; <br> QUIBIDS HOLDINGS LLC; <br> MATT BECKHAM; <br> MIKE BECKHAM; JEFF GEURTS; <br> and JOHN DOES 1-10, <br><br> Defendants. | Case No. 11-cv-1013 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Theresa Bryant, Jill Manning, Susan Snyder, and Diane Elliott filed a First Amended Complaint against Defendants QuiBids LLC, QuiBids Holdings, LLC, Matt Beckham, Mike Beckham, Jeff Geurts, and John Does 1-10. In their First Amended Complaint, Plaintiffs allege Defendants operate an illegal gambling enterprise which violates the gambling laws of several states. Plaintiffs bring this *qui tam* action to recover moneys lost by unnamed individuals through the "penny auction" website operated by Defendants. In response, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) as to Defendants Matt Beckham, Mike Beckham, and Jeff Geurts.[1]

---

[1] Defendants initially sought to dismiss Defendant QuiBids Holdings, LLC for lack of personal jurisdiction. However, Defendants filed a Notice of Correction on

Alternatively, Defendants move to transfer venue to the Western District of Oklahoma under 28 U.S.C. § 1404(a).[2] This Motion is presently before the Court.

## BACKGROUND

Plaintiff Theresa Bryant is a resident of Illinois. (Compl. ¶ 2.) The other named Plaintiffs reside in other states. (Compl. ¶¶ 3-5.) The remaining named Defendants in this dispute are located in Oklahoma. (Compl. ¶¶ 8-9.)

Defendant QuiBids LLC and its holding company, Defendant QuiBids Holdings LLC, are limited liability companies in Oklahoma, with their principal places of business in Oklahoma. *Id.* Defendants Matt Beckman, Mike Beckman, and Jeff Geurts ("the Owners") are CEO, CAO, and CFO, respectively, of QuiBids LLC and QuiBids Holdings LLC. *Id.* The John Does 1-10 include all past and present owners, officers, directors, investors, shareholders, partners, promoters, or financial transaction providers of the named Defendants. (Compl. ¶ 12.)

Defendants conduct business in all fifty states. (Compl. ¶ 13.) Defendants operate a website known as a "penny auction," through which users may purchase groups of bids priced from $20 to more than $500. (Compl. ¶¶ 46, 48.) Users bid on

---

January 26, 2012, admitting that specific personal jurisdiction exists for Defendant QuiBids Holdings LLC. While the record may have previously reflected QuiBids Holdings LLC was dismissed for lack of personal jurisdiction, this dismissal is vacated.

[2] Defendants also filed a Motion to Dismiss for failure to state a claim upon which relief may be granted under Federal Rule 12(b)(6) or, alternatively, compel arbitrations. Because the Motion to Transfer is granted, the Court did not consider and does not rule on the issues raised by the Motion to Dismiss for failure to state a claim or, alternatively, compel arbitrations. *See JDA eHealth Systems, Inc. v. Chapin Revenue Cycle Management, LLC*, No. 10 C 7781, 2011 WL 2518938, at *1 (N.D.Ill. June 23, 2011).

2

merchandise with their purchased groups of bids, and each bid increases the price of the merchandise by a penny. (Compl. ¶ 51.) Each bid costs a user $0.60. (Compl. ¶ 48.) Additional time is added to the clock each time a bid is placed. (Compl. ¶ 52.) When the clock runs out, the player who placed the last bid is the winner of the merchandise. (Compl. ¶ 53.)

According to Plaintiffs' First Amended Complaint, Defendants' business model is an illegal gambling operation, and violates the gambling laws of Illinois, Massachusetts, Georgia, Ohio, New Jersey, South Carolina, and Kentucky. (Compl. ¶ 13.) Plaintiffs do not allege they personally have participated in any of QuiBids' penny auctions; rather, they seek to recover from Defendants for the gambling losses of unidentified others. (Compl. ¶ 40.)

Plaintiffs allege jurisdiction is proper pursuant to 28 U.S.C. § 1332, as all Plaintiffs are diverse from all Defendants, and the matter in controversy exceeds $75,000. (Compl. ¶ 14.) Plaintiffs further claim venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(a)(3), which permits a case to be brought in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

## LEGAL STANDARD

A defendant may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Once a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction over the defendant. *RAR, Inc. v. Turner Diesel, Ltd.*,

107 F.3d 1272, 1276 (7th Cir. 1997) (*RAR*). Unless the court deems it necessary to hold an evidentiary hearing on the issue, the plaintiff need only make a *prima facie* case for personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 & n.13 (7th Cir. 2003) (*Purdue*). When considering a Rule 12(b)(2) motion, a court may receive and weigh affidavits. *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971). The court draws all reasonable inferences in favor of the plaintiff and resolves all factual disputes in its favor. *Purdue*, 338 F.3d at 783 & n.14.

A federal district court sitting in Illinois has personal jurisdiction over a nonresident party only if an Illinois state court would have jurisdiction over that party. *RAR*, 107 F.3d at 1275. A nonresident defendant may be sued in Illinois if: (1) jurisdiction is authorized under the Illinois long-arm statute and (2) the defendant has minimum contacts with Illinois such that the exercise of jurisdiction would not violate due process. *FMC Corp. v. Varanos*, 892 F.3d 1308, 1310 (7th Cir. 1990). Because the Illinois long-arm statute now extends personal jurisdiction to the limits allowed under the Due Process Clause of the Fourteenth Amendment, the Court need only determine whether the exercise of personal jurisdiction in this case would be contrary to the United States Constitution. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002) (*Hyatt*).

Due process requires that a defendant, if not present in the state, "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 315 (1945) (*Int'l Shoe*) (internal quotation marks omitted). Minimum

4

contacts can be demonstrated through facts supporting either general or specific jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8 & 9 (1984) (*Helicopteros*). Specific jurisdiction over a defendant exists when a suit arises out of or is related to the defendant's contacts with the forum; general jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. *RAR*, 107 F.3d at 1277 (quoting *Helicopteros*, 466 U.S. at 416). To have general jurisdiction over a defendant, "the defendant [must] have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes." *uBid, Inc. v. The GoDaddy Group, Inc., et al.*, 623 F.3d 421, 426 (7th Cir. 2010) (*GoDaddy*). A defendant's contacts cannot be merely random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (*Burger King*). Rather, the defendant's conduct and connection with the forum state should be such that the defendant should reasonably anticipate being haled into court in the forum state as a result of those minimum contacts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (*World-Wide Volkswagen*). To establish specific jurisdiction, courts will determine if it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *GoDaddy*, 623 F.3d at 426 (citing *Int'l Shoe*, 326 U.S. at 317).

Additionally, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer *any* civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). In ruling on a motion to transfer under § 1404(a), however, the movant bears the burden of establishing

5

that the transferee forum is clearly more convenient, and the decision lies in the sound discretion of the trial judge. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (*Coffey*). The court may consider facts presented by way of "affidavit, deposition, stipulation, or other relevant documents." *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983).

Defendants move to dismiss this action for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, alternatively, transfer the action to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a).

## ANALYSIS

*Motion to Dismiss for Lack of Personal Jurisdiction*

In order to grant a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), it must be clear neither general nor specific personal jurisdiction can be established over the defendants. *See GoDaddy*, 623 F.3d 421, 425.

<u>General Personal Jurisdiction</u>

Plaintiffs are unable to establish general personal jurisdiction over any Defendants because none of the Defendants have the necessary minimum contacts to support this jurisdiction. Plaintiffs allege Defendants have established minimum contacts by advertising, soliciting business, registering and accepting payments, and permitting Illinois residents to participate in their penny auctions. Compl. ¶ 38. Plaintiffs claim these contacts have been regular and continuous since 2009, when the business was

established. *Id.* However, the QuiBids website is advertised nationally, not with any specificity to Illinois, and the website is accessed across the United States, not specifically or only in Illinois.

Simply operating a website accessible in a forum state does not establish general personal jurisdiction. *GoDaddy*, 623 F.3d at 426. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2 LLC v. Ivanov,* 642 F.3d 555, 558 (7th Cir. 2011). *See also Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (*Hemi Group*). Entering into online agreements and shipping merchandise into Illinois is insufficient to establish general personal jurisdiction. *See Hemi Group,* 622 F.3d at 760. Furthermore, nothing indicates the Owners, acting on behalf of QuiBids LLC and QuiBids Holdings LLC, have continuous and systematic general business contacts with Illinois in their capacity as officers of the QuiBids entities. Thus, general personal jurisdiction cannot be established over any Defendants.

<u>Specific Personal Jurisdiction</u>

Personal jurisdiction may still be proper if specific personal jurisdiction can be established over the Defendants. This is a lower threshold, as a court need only determine if it is fair and reasonable to call a defendant into a court in the relevant jurisdiction. *See Burger King*, 471 U.S. at 463.

Defendants concede this Court has specific personal jurisdiction over QuiBids LLC and QuiBids Holdings LLC. (Def. Reply Br. at 3 and Def. Notice of Correction.)

7

However, Defendants argue specific personal jurisdiction cannot be established over the Owners, though Defendants do not dispute specific personal jurisdiction exists over QuiBids LLC or QuiBids Holdings LLC. "Specific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010) (citing *Burger King*, 471 U.S. at 472).

Defendants also argue no specific personal jurisdiction exists over the Owners. Plaintiffs claim specific personal jurisdiction exists over the Owners in the same manner it exists over QuiBids LLC, because contracts were made with Illinois residents, and QuiBids accepted payments from and shipped merchandise to Illinois residents. Alternatively, Plaintiffs believe personal jurisdiction may be established over the Owners by a conspiracy theory of jurisdiction. Personal jurisdiction over the Owners does not exist simply because of their relationship with QuiBids LLC. While an employee is not shielded from a suit in their individual capacity simply because they act in an official capacity, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). Corporations and their officers are separate entities; an action taken by an officer in the name of the corporation is *not* an action taken by the officer in his or her individual capacity. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002). To the extent the Owners availed themselves to Illinois law, they did so in their official capacities as officers of QuiBids LLC; their actions

merely served to establish the specific jurisdiction over QuiBids LLC. The Owners did not, in their individual capacities, specifically solicit Illinois business, market to Illinois customers, or ship merchandise to Illinois residents.

To establish jurisdiction under a conspiracy theory, Plaintiffs must:

> (1) make a *prima facie* factual showing of a conspiracy (i.e., point to evidence showing the existence of the conspiracy and the defendant's knowing participation in that conspiracy); (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in the forum.

*United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F.Supp.2d 904, 912 (N.D.Ill. 1999). Plaintiffs allege a conspiracy exists between QuiBids LLC, QuiBids Holdings LLC, and the Owners. Plaintiffs claim the Owners conspired with QuiBids LLC and participated in the allegedly illegal conduct of establishing a website Plaintiffs believe violates Illinois (as well as other states') gambling laws. "Under Illinois' intracorporate conspiracy doctrine, however, there can be no civil conspiracy between a corporation's own officers or employees nor between a corporation and its agents." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F.Supp.2d 885, 897 (N.D.Ill. 2009) (citing *Buckner v. Atl. Plant Maint.*, 182 Ill.2d 12, 24 (1998) (providing "a conspiracy cannot exist between a principal and an agent because the acts of the agent are deemed to be the acts of the principal"). The intracorporate conspiracy doctrine provides two exceptions where an officer of a company can be involved in a conspiracy with the corporation: (1) when a conspirator acts out of self-interest rather than in the principal's interest; or (2) when the scope of the act goes beyond the conspirator's official duties. *Id.* Neither exception is applicable in the present case. Plaintiffs do not allege the Owners acted out of self-

interest rather than the company's interest. Plaintiffs *do* allege the Owners acted outside their corporate duties by creating and maintaining, what they believe, is an illegal gambling business. (Compl. ¶ 24.) This is inconsistent with the Plaintiffs' position, because they also allege QuiBids LLC was established for the purpose of creating an illegal gambling business. Therefore, if the Owners acted to continue this purpose, they would be continuing to act in their official capacities. Because the Owners were acting in their official capacities as officers of QuiBids LLC, Plaintiffs are unable to show the Owners were part of a conspiracy with the company under the intracorporate conspiracy doctrine, and neither exception to this doctrine applies.

Plaintiffs have not established the existence of either general or specific personal jurisdiction in this Court over the Owners. Thus, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction in this Court as to Defendants Mike Beckham, Matt Beckham, and Jeff Geurts is granted. The only named Defendants remaining in this case are QuiBids LLC and QuiBids Holdings LLC.

*Motion to Transfer*

In the alternative to their 12(b)(2) Motion, Defendants have filed a Motion to Transfer the case to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a). A party seeking transfer must show the following: (1) that venue is proper in both the transferor and the transferee courts; (2) that transfer is for the convenience of the parties and witnesses; and (3) that transfer is in the interest of justice. 28 U.S.C. § 1404(a); *Coffey*, 796 F.2d at 219.

## Venue in the Transferor and Transferee Courts

As discussed above, specific personal jurisdiction has been established over Defendant QuiBids LLC, and as the Defendants conceded in their Notice of Correction, Defendant QuiBids Holdings LLC. Plaintiffs allege venue is proper under 28 U.S.C. § 1391(a)(3).[3] This statute provides a case may be brought only in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). Since Defendants QuiBids LLC and QuiBids Holdings LLC are subject to personal jurisdiction in this district, venue is established in the transferor court. Furthermore, venue would also be proper in the transferee court of the Western District of Oklahoma, because that district also has personal jurisdiction over QuiBids LLC and QuiBids Holdings LLC, based on their continuous and systematic contacts with Oklahoma.

## Convenience of Parties and Witnesses

The determination of which venue is more convenient for the parties and the witnesses is fact-intensive and is at the discretion of the district court. *Coffey*, 796 F.2d at 219. To make this determination, courts in this District consider five factors: (1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties litigating in the respective

---

[3] Plaintiffs erroneously cite to statute 28 U.S.C. § 1391(3), rather than 28 U.S.C. § 1391*(a)*(3) (emphasis added); for purposes of this analysis, the Court will assume venue is alleged under 28 U.S.C. § 1391(a)(3).

forum; and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D.Ill. 2000).

Weight is typically given to the plaintiff's initial choice of forum, which is the Northern District of Illinois in this case. The court shall give substantial weight to the plaintiff's choice of forum unless the choice of forum lacks any significant connection to the claim. *Symons Corp. v. Southern Forming and Supply, Inc.*, 954 F.Supp. 184, 186 (N.D.Ill. 1997). While this forum is given some deference, it is not a determinative factor. Only one of the four Plaintiffs is a citizen of Illinois, and the Plaintiffs allege violations of seven different states' anti-gambling laws in a *qui tam* action. Additionally, the cause of action did not exclusively and singularly arise in this district; Plaintiffs could have filed in Massachusetts, Georgia, or Washington, where the other named Plaintiffs reside. No significant connection to Illinois makes the choice of the forum here more distinctive than in other states with similar gambling laws. This factor is afforded very little weight.

The other four factors undoubtedly weigh in favor of the transfer to the Western District of Oklahoma. The Plaintiffs allege the QuiBids website violates gambling laws in multiple states, and all of the development and management of this website took place and continues to take place in Oklahoma. All QuiBids employees are located in Oklahoma, as are any material documents (including documents relating to QuiBids' customers in the seven states at issue). Any material events relating to the operations of the QuiBids website clearly occurred in Oklahoma, and many (if not all) of the potential witnesses would likely be found to reside in Oklahoma.

In determining the relative convenience to the parties and witnesses, it is apparent the Western District of Oklahoma would be a more suitable venue.

## The Interest of Justice

In determining if a transfer is in the interest of justice, a court may consider: (1) whether a transfer promotes the "efficient administration of the court system," (2) whether the action could be consolidated with other actions in the transferee district, (3) whether the judges in the transferee district are more familiar with the pertinent state law, (4) whether jurors in a particular district have a "financial interest in [the] case," and (5) which district would have jurors that could "best apply community standards." *American Cas. Co. of Reading v. Filco*, 2009 WL 1766728, at * 2 (N.D.Ill. June 22, 2009) (citing *Coffey*, 796 F.2d at 220-21, 221 n. 4). In considering the interests of justice, the transferor court should focus on whether the proposed transfer would promote the "efficient functioning of the courts." *Coffey*, 796 F.2d at 221. Another factor to consider is whether the transferee district has a lighter docket than the transferor district. *See In re National Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003).

The remaining factor requires consideration of the effect of transfer on the efficient administration of the courts. No showing has been made of any other actions pending in this or the transferee district which could be consolidated with this case, nor, why judges in the transferee district would be more or less effective in the application of the controlling law of the seven states than a judge in this district (albeit one of the state laws at issue in this case is law from Illinois, where this Court sits). Nor has it been shown that jurors in this or the transferee district are likely to have a greater "financial

13

interest" in this case nor could better apply "community standards." Thus, in considering the interest of justice, the primary focus is on the efficiency of the courts. As Defendants argue, the dockets of the Western District of Oklahoma are less congested than the Northern District of Illinois, and cases are resolved by trial more quickly there. (Def. Mot. to Dismiss for Lack of Personal Jurisdiction, at 15.) It is also likely that having the venue nearer to the case's potential witnesses and evidence would assist to expedite the proceedings of this case.

Therefore, this case would be best served in a transfer to the Western District of Oklahoma. This transfer would be in the interest of justice, more convenient to witnesses and parties, and venue is proper in both the transferor and transferee districts.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted as to Defendants Matt Beckham, Mike Beckham, and Jeff Geurts. Additionally, Defendants' Motion to Transfer Venue to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a) as to the remaining Defendants, QuiBids LLC and QuiBids Holdings LLC, is granted.

Date: 2-3-12

JOHN W. DARRAH
United States District Court Judge